**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| STEVEN BETTS, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| SYMPLE LENDING LLC, | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiff Steven Betts ("Plaintiff"), individually and on behalf of all others similarly situated, brings this putative class action against Defendant Symple Lending LLC ("Defendant") and, based upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and upon information and belief, supported by the investigation of Plaintiff's counsel, as to all other matters, Plaintiff alleges as follows:

**NATURE OF THE ACTION**

1. This putative class action arises out of Defendant's violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, and its implementing regulations adopted by the Federal Communications Commission ("FCC"), and Defendant's violations of the Florida Telephone Solicitation Act, Fla. Stat. § 501.059 ("FTSA").

2. As alleged herein, Defendant violated several provisions of both the TCPA and the FTSA by (1) placing telephone calls to the cell phone numbers of Plaintiff and the proposed Class ("Class," defined below) using an automatic telephone dialing system and/or an automated system for the selection or dialing of telephone numbers without prior express written consent; (2) placing calls to Plaintiff and the Class using an artificial or prerecorded voice; (3) initiating telephone

solicitations to residential telephone numbers registered on the National Do Not Call ("DNC") Registry without prior express written consent; (3) initiating telemarketing calls without instituting "procedures for maintaining a list of persons who request not to receive such calls" that met the FCC's "minimum standards"; and (4) by failing to honor requests from Plaintiff and the Class members to not receive further calls by or Defendant's behalf.

3.      Through this action, Plaintiff seeks injunctive relief to end Defendant's ongoing and future violations of the TCPA and the FTSA. Plaintiff also seeks an award of statutory damages and/or liquidated damages to Plaintiff and the Class.

## JURISDICTION AND VENUE

4.      **Subject Matter Jurisdiction.** This Court has federal question subject matter jurisdiction over Plaintiff's federal TCPA claims pursuant to 28 U.S.C. § 1331. This Court has supplemental subject matter jurisdiction over Plaintiff's FTSA claims pursuant to 28 U.S.C § 1367 as those claims are so related to Plaintiff's FTSA that they form part of the same case or controversy.

5.      **Personal Jurisdiction.** This Court has personal jurisdiction over Defendant because this suit arises out of and relates to Defendant's contacts with Florida as Defendant initiated and directed the unlawful telemarketing calls at issue to Plaintiff who received such calls while located in Florida.

6.      **Venue.** Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## PARTIES

7.      Plaintiff is a natural person and, at all relevant times, was a resident of Broward County, Florida.

8. Defendant is a Wyoming Limited Liability Company with its principal place of business in Newport Beach, California.

**FACTUAL ALLEGATIONS**

9. At all relevant times, Plaintiff was the subscriber and primary user of a cellular telephone number ending in 2348.

10. Plaintiff's 2348 number is Plaintiff's residential line.

11. Plaintiff registered his 2348 number on the National DNC, and it has been so registered since 2009.

12. To promote the sale of its goods and services, Defendant engages in aggressive and intrusive telemarketing to consumers using automated technology and artificial or prerecorded voices without prior express written consent.

13. Defendant also initiates telephone solicitations calls to residential telephone numbers registered on the National DNC Registry, without prior express written consent.

14. Defendant also initiates telemarketing calls without complying with the FCC's requirement that it institute "minimum standards" for "procedures for maintaining a list of persons who request not to receive such calls."

15. As a result of Defendant's failure to meet even the "minimum standards" as to the required "procedures for maintaining a list of persons who request not to receive such calls," Defendant continues to harass consumers with unsolicited telephone calls even after they repeatedly comminated to Defendant that they do not wish to receive further calls.

16. Beginning around October 3, 2024, Defendant—or third-parties acting on Defendant's behalf—began bombarding Plaintiff with unsolicited telemarketing calls using automated technology.

3

17. As some examples, without limitation, Plaintiff received at least the following phone calls from Defendant, or on Defendant's behalf:

    a.  On October 23, 2024, at 1:25 p.m. from 715-300-3578.

    b.  On October 25, 2024, at 5:28 p.m. from 618-538-1346.

    c.  On November 23, 2024, at 5:26 p.m. from 351-226-1441.

    d.  On November 23, 2024, at 5:27 p.m. from 351-226-1441.

    e.  On November 28, 2024, at 9:01 a.m. from 423-422-8027.

    f.  On November 28, 2024, at 9:00 a.m. from 423-422-8027 (Thanksgiving Day).

    g.  On November 29, 2024, at 6:03 p.m. from 423-422-8027.

18. When Plaintiff listened to the voicemails, he was easily able to determine that it was a prerecorded message. *See Rahn v. Bank of Am.*, No. 1:15-CV-4485-ODEJSA, 2016 U.S. Dist. LEXIS 186171, at *10-11 (N.D. Ga. June 23, 2016) ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message.").

19. The purpose of each call was to promote and encouraging the purchase of Defendant's goods and services.

20. Plaintiff called the telephone numbers from which he received Defendant's calls and asked to not receive further calls from Defendant or on Defendant's behalf.

21. Defendant ignored each of Plaintiff's do-not-call requests and continued placing calls to Plaintiff.

22. Plaintiff has no existing business relationship with Defendant.

23. Plaintiff never provided Defendant with prior express written consent, or any consent or permission, to receive the calls at issue.

24. Even if Plaintiff had (hypothetically) consented to receive Defendant's telephone calls (which he did not), Plaintiff revoked any such purported consent when she asked Defendant to stop calling.

25. Defendant's failure to "honor [Plaintiff's] do-not-call request within a reasonable time" means that Defendant failed to meet one of the TCPA's "minimum standards" telemarketers are obligated to meet in order to place "any call for telemarketing purposes to a residential telephone subscriber." *See* 47 U.S.C. § 64.1200(d) & (d)(3).

26. Defendant's failure to honor Plaintiff's repeated do-not-call requests also strongly suggests that Defendant does not meet the other "minimum standards" of Section § 64.1200(d). Specifically, it strongly suggests that Defendant (1) does not have a written policy for maintaining an internal do not call list, as required by 47 U.S.C. § 64.1200(d)(1); (2) does not inform and train its personnel engaged in telemarking on the existence and use of any internal do-not-call list, as required by Section 64.1200(d)(2); (3) does not "record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made," as required by Section 64.1200(d)(3); and (4) does not maintain a record of a consumer's request not to receive further calls, as required by Section 64.1200(d)(6).

27. Defendant's unlawful calls caused Plaintiff and the Class members concrete injury and actual damages, including inconvenience, invasion of privacy, aggravation, annoyance, intrusion upon seclusion, wasted time, and violation of their statutory privacy rights. For example, apart from causing Plaintiff to spend time investigating the source of the calls and invest time researching and hiring counsel, Plaintiff received some of the unsolicited at inconvenient times—including on Thanksgiving Day—causing Plaintiff to stop to check his phone and waste time

5

answering the calls to confirm they were not for an emergency purpose, causing specific injury, annoyance, aggravation, trespass, intrusion, and disruption onto Plaintiff's personal and daily life.

## CLASS ALLEGATIONS

28.     Plaintiff brings this action individually and as a class action under Fed. R. Civ. P. 23 on behalf of the following proposed Classes:

**TCPA Autodialer Class:** All persons within the United States who, within the four years prior to the filing of this lawsuit and the date of class certification, (1) received a telephone call, (2) by or on behalf of Defendant, (3) on their cellular telephone number, (4) using the same equipment or type of equipment used to call Plaintiff, (5) and who did not give prior express written consent to receive such calls.

**TCPA Prerecorded Voice Class:** All persons within the United States who, within the four years prior to the filing of this lawsuit and the date of class certification, (1) received a telephone call, (2) by or on behalf of Defendant, (3) on their cellular telephone number, (4) that used an artificial or pre-recorded voice (5) and who did not give prior express written consent to receive such calls.

**TCPA DNC Registry Class:** All persons in the United States who, within the four years prior to the filing of this lawsuit and the date of class certification, (1) received two or more telephone calls in any 12-month period (2) by or on behalf of Defendant (3) for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, (4) after their telephone number had been listed on the National Do Not Call Registry for at least thirty days.

**TCPA Internal DNC Class:** All persons in the United States who, within the four years prior to the filing of this lawsuit and the date of class certification, (1) made a request to not receive telephone calls from or on behalf of Defendant, and (2) received two or more telephone calls in any 12-month period (3) by or on behalf of Defendant (4) for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.

**FTSA Autodialer Class:** All persons in the State of Florida who, between July 1, 2021, and the date of class certification, (1) received a telephone phone call (2) by or on behalf of Defendant (3) regarding Defendant's property, goods, and/or services (4) using the same equipment or type of equipment utilized to call Plaintiff, (5) and who did not give prior express written consent to receive such calls.

**FTSA Prerecorded Voice Class:** All persons in the State of Florida who, between July 1, 2021, and the date of class certification, (1) received a telephone phone call (2) by or on behalf of Defendant (3) regarding Defendant's property, goods, and/or

services (4) that played a recorded message, (5) and who did not give prior express written consent to receive such calls.

**FTSA DNC Class:** All persons in the State of Florida who, between July 1, 2021, and the date of class certification, (1) received a telephone call (2) by or on behalf of Defendant (3) regarding Defendant's property, goods, and/or services (4) after their telephone number had been listed on the National Do Not Call Registry for at least thirty days.

**The FTSA Internal DNC Class:** All persons in the State of Florida who, between July 1, 2021, and the date of class certification (1) received a telephone call (2) by or on behalf of Defendant (3) regarding Defendant's property, goods, and/or services (4) after they communicated that they do not wish to receive an outbound telephone call made by or on behalf of Defendant.

29.     The Classes defined above are, at times, referred to herein individual or collectively as the "Class."

30.     Plaintiff reserves the right to expand or narrow the definitions of the Classes following discovery.

31.     Excluded from the Class is Defendant and its employees and agents.

32.     *Numerosity.* The members of the Class are so numerous that individual joinder is impracticable. Plaintiff cannot know the exact number of Class members affected by Defendant's conduct, but based on the general nature of telemarketing campaigns, Plaintiff believes, and therefore alleges upon information and belief, that each Class includes, at a minimum, at least 40 members. The members of the Class are ascertainable because they are defined by reference to objective criteria. The exact number and identities of the Class members are unknown at this time but can be ascertained through discovery as Defendant maintains internal records that can be used to identify each member of the Class, such that identification of the Class members is a matter capable of ministerial determination from Defendant's records.

33.     *Common questions of law and fact predominate.* There are numerous questions of law and fact that are common to the Class that predominate over any questions affecting only

7

individual members of the Class, which will produce common answers that will drive resolution of the litigation, and they include, but are not limited to, the following:

a. Whether Defendant placed telephone calls to Plaintiff and the Class using an automatic telephone dialing system within the meaning of the TCPA;

b. Whether Defendant placed telephone calls to Plaintiff and the Class using an automated system for the selection and dialing of telephone numbers within the meaning of the FTSA;

c. Whether Defendant placed telephone calls to Plaintiff and the Class using an artificial or prerecorded voice;

d. Whether Defendant placed telephone calls to Plaintiff and the Class using a prerecorded message;

e. Whether Defendant placed telephone calls to telephone numbers registered on the National DNC;

f. Whether Defendant initiated telemarketing calls without instituting the "minimum standards" for procedures for maintaining a list of persons who request not to receive such calls;

g. Whether Defendant called Plaintiff and the Class after they communicated that they do not wish to receive an outbound telephone call made by or on behalf of Defendant;

h. Whether Defendant's telephone calls introduced an advertisement;

i. Whether Defendant's telephone calls constitute "telephone solicitations" under the TCPA;

j. Whether Defendant's telephone calls constitute "telemarketing" under the TCPA;

k. Whether Defendant's telephone calls constitute "telephonic sales calls" under the FTSA;

l. Whether Defendant can meet its burden of showing that it had prior express written consent to place telephone calls to Plaintiff and the Class using automated means;

m. Whether Defendant can meet its burden of showing that it had prior express written consent to place telephone calls to Plaintiff and the Class using an artificial or prerecorded voice;

n. Whether Defendant can meet its burden of showing that it had prior express written consent to place telephone calls to telephone numbers listed on the National DNC Registry;

o. Whether Defendant acted knowingly or willfully in placing the unlawful calls at issue;

p. Whether Defendant is liable to Plaintiff and the Class for statutory damages and/or liquidated damages, and the amount of such damages; and

q. Whether Defendant should be enjoined from engaging in such conduct in the future.

34. ***Typicality.*** Plaintiff's claims are typical of the claims of each member of the Class because they are based on the same factual and legal theories, Plaintiff and the Class members were harmed by Defendant in the same way, and Plaintiff is not subject to any unique defenses.

9

35.     *Adequacy of Representation.* Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and TCPA litigation specifically, and Plaintiff intends to vigorously prosecute this action. Plaintiff also has no interests that are antagonistic to those of the members of the Class.

36.     *Superiority.* A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by members of the Class amount to millions of dollars, the amount of individual damages available to each member of the Class as a result of Defendant's violations of law alleged herein does not warrant the expense of individual lawsuits. The likelihood of individual members of the Class prosecuting their own separate claims is remote and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

37.     Further, the prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.

## CAUSES OF ACTION

### COUNT 1

**Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)**
**(On Behalf of Plaintiff and the TCPA Autodialer Class)**

38.     Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

10

39.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system…to any telephone number assigned to a…cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

40.     It is also a violation of the TCPA's implementing regulations adopted by the FCC to "initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system…to any telephone number assigned to a…cellular telephone service." 47 C.F.R. § 64.1200(a)(1)(iii).

41.     Additionally, it is a violation of the TCPA's implementing regulations to "[i]nitiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system…other than a call made with the prior express written consent of the called party[.]" 47 C.F.R. § 64.1200(a)(2).

42.     As alleged herein, Defendant—or third-parties acting on Defendant's behalf—placed telephone calls to the cellular telephone numbers of Plaintiff and the Class using an automatic telephone dialing system.

43.     The following facts strongly suggest that Defendant used an automatic telephone dialing system to place the calls at issue to Plaintiff and the Class: (1) Plaintiff never provided Defendant with his telephone phone number; (2) Plaintiff has no existing business relationship with Defendant; (3) Defendant's telephone calls to Plaintiff were designed to enroll Plaintiff into a health insurance plan and were obviously designed for *en masse* transmission; and (4) Defendant's website concedes that it places telephone calls "using an automatic telephone dialing system."[1]

---

[1] https://symplelending.com/terms-of-use?__hstc=197414000.080e98fc41a427745ab4a0775b57e0df.1736726079827.1736726079827.1736726079827.1

44.     Defendant did not have prior express written consent to place telephone calls to Plaintiff and the Class using an automatic telephone dialing system.

45.     Defendant, therefore, violated Section 227(b)(1)(A)(iii) and the TCPA's implementing regulations in Sections 64.1200(a)(1)(iii) and (a)(2).

46.     As a result of Defendant's violations of the TCPA, Plaintiff and the Class members were harmed.

47.     Plaintiff and the Class members are entitled to an injunction against Defendant's ongoing and future violations of the TCPA. 47 U.S.C. § 227(b)(3)(A).

48.     Plaintiff and the Class members are also entitled to an award of statutory damages of $500.00 for each telephone call that Defendant placed in violation of the TCPA. 47 U.S.C. § 227(b)(3)(B).

49.     Because Defendant knew or should have known that it was using an automatic telephone dialing system to place calls without prior express written consent, Defendant's violations of the TCPA were willful or knowing.

50.     Under the TCPA, Plaintiff and the Class are entitled to an award of treble statutory damages of $1,500.00 for each telephone call that Defendant placed in knowing or willful violation of the TCPA. 47 U.S.C. § 227(b)(3)(C).

**COUNT 2**

**Violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)**
**(On Behalf of Plaintiff and the TCPA Prerecorded Voice Class)**

51.     Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above, except for the allegations in the preceding Count, as though fully set forth herein.

---

&__hssc=197414000.1.1736726079827&__hsfp=3414075492&_gl=1*124r0tq*_gcl_au*MTA1Mzk1MjI0Ny4xNzM2NzI2MDcy*FPAU*MTA1Mzk1MjI0Ny4xNzM2NzI2MDcy

52.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using…an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

53.     As alleged herein, Defendant—or third-parties acting on Defendant's behalf—placed telephone calls to the cellular telephone numbers of Plaintiff and the Class using an artificial or prerecorded voice.

54.     When Plaintiff listened to the voicemails, he was easily able to determine that it was a prerecorded message. *See Rahn*, 2016 U.S. Dist. LEXIS 186171, at *10-11 ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message.").

55.     Defendant did not have prior express written consent to place telephone calls to Plaintiff and the Class using an artificial or prerecorded voice.

56.     Defendant, therefore, violated Section 227(b)(1)(A)(iii).

57.     As a result of Defendant's violations of the TCPA, Plaintiff and the Class members were harmed.

58.     Plaintiff and the Class members are entitled to an injunction against Defendant's ongoing and future violations of the TCPA. 47 U.S.C. § 227(b)(3)(A).

59.     Plaintiff and the Class members are also entitled to an award of statutory damages of $500.00 for each telephone call that Defendant placed in violation of the TCPA. 47 U.S.C. § 227(b)(3)(B).

60.     Because Defendant knew or should have known that it was placing calls using an artificial or prerecorded voice without prior express written consent, Defendant's violations of the TCPA were willful or knowing.

61.     Under the TCPA, Plaintiff and the Class are entitled to an award of treble statutory damages of $1,500.00 for each telephone call that Defendant placed in knowing or willful violation of the TCPA. 47 U.S.C. § 227(b)(3)(C).

**COUNT 3**

**Violation of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the DNC Registry Class)**

62.     Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above, except for the allegations in the preceding Counts, as though fully set forth herein.

63.     The TCPA established a National DNC Registry of phone numbers of consumers who object to receiving telephone solicitations. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014. 61.

64.     The TCPA's implementing regulations adopted by the FCC provide that "[n]o person or entity shall initiate any telephone solicitation to[] [a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." 47 C.F.R. § 64.1200(c)(2).

65.     A violation of Section 64.1200(c) is actionable through 47 U.S.C. § 227(c)(5), which grants a private right of action to any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of [Section 64.1200(c)]." 47 U.S.C. § 227(c)(5).

14

66. Defendant violated Section 64.1200(c) by initiating, or causing to be initiated on its behalf, more than one telephone solicitation in a 12-month period to the residential telephone lines of Plaintiff and the Class members while their telephone numbers were registered on the National DNC Registry.

67. Defendant's telephone calls to Plaintiff and the Class members constitute "telephone solicitations" under the TCPA because they were initiated "for the purpose of encouraging the purchase or rental of…property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

68. Defendant did not have prior express written consent to initiate telephone solicitations to Plaintiff and the Class while their numbers were registered on the National DNC Registry.

69. Defendant did not have prior express invitation or permission to initiate telephone solicitations to Plaintiff and the Class while their numbers were registered on the National DNC Registry.

70. Defendant did not have an established business relationship with Plaintiff or the Class.

71. As a result of Defendant's violations of the TCPA, Plaintiff and the Class members were harmed.

72. Plaintiff and the Class members are entitled to an injunction against Defendant's ongoing and future violations of the TCPA. 47 U.S.C. § 227(c)(5)(A).

73. Plaintiff and the Class members are entitled to an award of statutory damages of $500.00 for each telephone call that Defendant placed in violation of the TCPA. 47 U.S.C. § 227(c)(5)(B).

15

74.     Because Defendant knew or should have known that it was initiating telephone solicitations to numbers on the National DNC Registry without the requisite level of consent, Defendant's violations of the TCPA were willful or knowing.

75.     Plaintiff and the Class are entitled to an award of treble statutory damages of $1,500.00 for each telephone call that Defendant placed in knowing or willful violation of the TCPA. 47 U.S.C. § 227(c)(5)(C).

## COUNT 4

### Violation of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiff and the TCPA Internal DNC Class)

76.     Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above, except for the allegations in the preceding Counts, as though fully set forth herein.

77.     The TCPA's implementing regulations adopted by the FCC prohibit telemarketers from initiating any call for telemarketing purposes unless they institute certain procedures to ensure do-not-call requests are honored:

> No person or entity shall *initiate…any call for telemarketing purposes* to a residential telephone subscriber *unless* such person or entity has *instituted procedures for maintaining a list of persons who request not to receive such calls* made by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d) (emphasis added).

78.     Section 64.1200(d) requires that "[t]he procedures instituted *must meet* the following *minimum standards*:"

> (1)     *Written policy*. Persons or entities making…calls for telemarketing purposes *must have a written policy*, *available upon demand*, for maintaining a do-not-call list.
>
> (2)     *Training of personnel*. Personnel…engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

16

(3)    *Recording, disclosure of do-not-call requests.* If a person or entity making…any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity **must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list** at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) **must honor a residential subscriber's do-not-call request within a reasonable time** from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not- call request. A person or entity making…any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

\*          \*          \*

**(6)** *Maintenance of do-not-call lists.* A person or entity making…any call for telemarketing purposes must maintain a record of a consumer's request not to receive further calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(1)-(6) (emphasis added).

79.    A violation of Section 64.1200(d) is actionable through 47 U.S.C. § 227(c)(5), which grants a private right of action to any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of [Section 64.1200(d)]." 47 U.S.C. § 227(c)(5).

80.    Defendant violated Section 64.1200(d) by initiating, or causing to be initiated on its behalf, more than one telephone solicitation in a 12-month period to Plaintiff and the Class members without instituting the "minimum standards" for "procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity."

17

81.     Specifically, Defendant placed two or more calls to Plaintiff and the Class on their residential line for telemarketing purposes.

82.     Defendant's calls to Plaintiff and the Class constitute "telemarketing" under the TCPA because they were initiated "for the purpose of encouraging the purchase or rental of…property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(13).

83.     When Plaintiff and the Class received telemarketing calls by Defendant or on its behalf, they made repeated "do-not-call" requests.

84.     Defendant failed to "honor [Plaintiff's and the Class members'] do-not-call request within a reasonable time" and continued to place telemarketing calls to Plaintiff and the Class.

85.     Given the capabilities of modern telemarketing tools and technology, Defendant has the capability of immediately complying with do-not-call request. Thus, by failing to immediately record and honor Plaintiff's do-not-call request and continuing to initiate multiple telemarketing calls to Plaintiff even four days after his request, Defendant failed to honor his do-not-call request "within a reasonable time." *See Lourie*, 2024 U.S. Dist. LEXIS 119679, at *9-10 ("Because the Court must accept as true [plaintiff's] allegation that 'Defendant has the capability of immediately complying with Plaintiff's [do-not-call] request,' at this stage of the dispute, the Court must infer that Defendant could have immediately complied with the request prior to the transmittal of the two telemarketing text messages in the week following Lourie's request.") (internal citations omitted).

86.     By failing to "honor a residential subscriber's do-not-call request within a reasonable time," Defendant failed to meet the required "minimum standard" of Section 64.1200(d)(3).

18

87.     Defendant's failure to honor Plaintiff's repeated do-not-call requests also strongly suggests that Defendant also does not meet the other "minimum standards" for the required "procedures for maintaining a list of persons who request not to receive" telemarketing. Specifically, it suggests that Defendant (1) does not have a written policy for maintaining an internal do not call list, as required by 47 U.S.C. § 64.1200(d)(1); (2) does not inform and train its personnel engaged in telemarking on the existence and use of any internal do-not-call list, as required by Section 64.1200(d)(2); (3) does not "record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made," as required by Section 64.1200(d)(3); and (4) does not maintain a record of a consumer's request not to receive further calls, as required by Section 64.1200(d)(6).

88.     Because Defendant does not meet the "minimum standards" of Section 64.1200(d), Defendant violated Section 64.1200(d) every time it "initiate[d] *any call* for telemarketing purposes," regardless of whether the recipient made a do-not-call request. 47 C.F.R. § 64.1200(d) (emphasis added).

89.     As a result of Defendant's violations of the TCPA, Plaintiff and the other members of the TCPA Class were harmed.

90.     Plaintiff and the Class members are entitled to an injunction against Defendant's ongoing and future violations of the TCPA. *See* 47 U.S.C. § 227(c)(5)(A).

91.     Plaintiff and the Class members are entitled to an award of statutory damages of $500.00 for each telephone call that Defendant placed in violation of the TCPA. *See* 47 U.S.C. § 227(c)(5)(B).

92.     Because Defendant knew or should have known that it was initiating calls for telemarketing purposes without instituting the "minimum standards" for the "procedures for

19

maintaining a list of persons who request not to receive such calls" required by Section 64.1200(d), Defendant's violations of the TCPA were willful or knowing.

93.     Thus, Plaintiff and the Class members are entitled to an award of treble statutory damages of $1,500.00 for each telephone call that Defendant placed in knowing or willful violation of the TCPA. *See* 47 U.S.C. § 227(c)(5)(C).

## COUNT 5

### Violation of the FTSA, Fla. Stat. § 501.059(8)(a)
### (On Behalf of Plaintiff and the FTSA Autodialer Class)

94.     Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above, except for the allegations in the preceding Counts, as though fully set forth herein.

95.     The FTSA prohibits a person from "mak[ing] or knowingly allow[ing] to be made an unsolicited telephonic sales call if such call involves an automated system for the selection or dialing of telephone numbers…without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

96.     Defendant made or knowingly allowed to be made unsolicited telephonic sales calls to Plaintiff and the Class using an automated system for the selection or dialing of telephone numbers.

97.     Defendant's calls to Plaintiff and the Class constitute "telephonic sales calls" under the FTSA because they were initiated "for the purpose of soliciting a sale of any consumer goods or services." Fla. Stat. § 501.059(8)(a)(1)(j).

98.     The following facts strongly suggest that Defendant used an automated system for the selection or dialing of telephone numbers to place the calls at issue to Plaintiff and the Class: (1) Plaintiff never provided Defendant with his telephone phone number; (2) Plaintiff has no existing business relationship with Defendant; and (3) Defendant's telephone calls to Plaintiff were

20

designed to enroll Plaintiff into a health insurance plan and were obviously designed for *en masse* transmission.

99.     Defendant placed the telephone calls to Plaintiff and the Class who received such calls while located in Florida.

100.    Defendant did not obtain "prior express written consent" to place unsolicited telephonic sales calls to Plaintiff and the Class using an automated system for the selection and dialing of telephone numbers, as required by Section 501.059(8)(a).

101.    Thus, Defendant's telephone calls to Plaintiff and the Class violated the Section 501.059(8)(a) of the FTSA.

102.    Plaintiff and the Class members were harmed and aggrieved by Defendant's violations of the FTSA.

103.    Plaintiff and the members of the Class are entitled to an injunction against Defendant's ongoing and future violations of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(1).

104.    Plaintiff and the Class are entitled to an award of liquidated damages of $500.00 for each telephone call that Defendant placed in violation of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(2).

105.    Because Defendant knew or should have known that it was using an automated system for the selection and dialing of telephone numbers to place telephone calls to Plaintiff and the Class without prior express written consent, Defendant's violations of the FTSA were willful or knowing.

106.    Thus, Plaintiff and the Class are entitled to an award of liquidated damages of $1,500 for each telephone call that Defendant placed in knowing or willful violation of the FTSA. Fla. Stat. § 501.059(10)(b).

21

107. Under Fla. Stat. § 501.059(11)(a), Plaintiff entitled to recover his reasonable attorney fees and costs from the Defendant.

### COUNT 6

**Violation of the FTSA, Fla. Stat. § 501.059(8)(a)**
**(On Behalf of Plaintiff and the FTSA Prerecorded Voice Class)**

108. Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above, except for the allegations in the preceding Counts, as though fully set forth herein.

109. The FTSA prohibits a person from "mak[ing] or knowingly allow[ing] to be made an unsolicited telephonic sales call if such call involves…the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

110. Defendant made or knowingly allowed to be made unsolicited telephonic sales calls to Plaintiff and the Class that involved the playing of a recorded message when a connection is completed.

111. Defendant's calls to Plaintiff and the Class constitute "telephonic sales calls" under the FTSA because they were initiated "for the purpose of soliciting a sale of any consumer goods or services." Fla. Stat. § 501.059(8)(a)(1)(j).

112. When Plaintiff listened to the voicemails, he was easily able to determine that it was a prerecorded message. *See Rahn*, 2016 U.S. Dist. LEXIS 186171, at *10-11 ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message.").

113. Defendant placed the telephone calls to Plaintiff and the Class who received such calls while located in Florida.

114.    Defendant did not obtain "prior express written consent" to place unsolicited telephonic sales calls to Plaintiff and the Class a prerecorded message, as required by Section 501.059(8)(a).

115.    Thus, Defendant's telephone calls to Plaintiff and the Class violated the Section 501.059(8)(a) of the FTSA.

116.    Plaintiff and the Class members were harmed and aggrieved by Defendant's violations of the FTSA.

117.    Plaintiff and the members of the Class are entitled to an injunction against Defendant's ongoing and future violations of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(1).

118.    Plaintiff and the Class are entitled to an award of liquidated damages of $500.00 for each telephone call that Defendant placed in violation of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(2).

119.    Because Defendant knew or should have known that it was using a prerecorded message to place telephone calls to Plaintiff and the Class without prior express written consent, Defendant's violations of the FTSA were willful or knowing.

120.    Thus, Plaintiff and the Class are entitled to an award of liquidated damages of $1,500 for each telephone call that Defendant placed in knowing or willful violation of the FTSA. Fla. Stat. § 501.059(10)(b).

121.    Under Fla. Stat. § 501.059(11)(a), Plaintiff entitled to recover his reasonable attorney fees and costs from the Defendant.

## COUNT 7

### Violation of the FTSA, Fla. Stat. § 501.059(4)
### (On Behalf of Plaintiff and the FTSA DNC Registry Class)

122.    Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above, except for the allegations in the preceding Counts, as though fully set forth herein.

123.    It is a violation of the FTSA for a "telephone solicitor" to "make or cause to be made any unsolicited telephonic sales call to any residential…telephone number if the number for that telephone appears" on the National DNC Registry. Fla. Stat. § 501.059(4).

124.    Defendant is, and at all times relevant was, a "telephone solicitor" as defined by Section 501.059(1)(i), because Defendant is an "organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call[.]"

125.    Defendant—or third-parties acting on Defendant's behalf—caused or caused to be made unsolicited telephone calls to the Plaintiff and the Class on their residential telephone number.

126.    The telephone numbers of Plaintiff and the Class to which Defendant placed unsolicited telephonic calls were registered on the National DNC Registry.

127.    Defendant's unsolicited telephone calls to the Plaintiff and the Class constitute "telephonic sales calls" as defined by Section 501.059(1)(j) because Defendant initiated those calls to promote its "consumer goods or services."

128.    Defendant placed the telephone calls to Plaintiff and the Class from Florida who received such calls while located in Florida.

129.    Defendant placed such unsolicited telephonic sales calls to Plaintiff and the Class members without their prior express written consent.

24

130. Thus, Defendant violated Section 501.059(4) of the FTSA.

131. Plaintiff and the Class members were harmed and aggrieved by Defendant's violations of the FTSA.

132. Plaintiff and the members of the Class are entitled to an injunction against Defendant's ongoing and future violations of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(1).

133. Plaintiff and the Class are entitled to an award of liquidated damages of $500.00 for each telephone call that Defendant placed in violation of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(2).

134. Because Defendant knew or should have known that it was placing telephonic sales calls to telephone numbers registered on the National DNC Registry without prior express written consent, Defendant's violations of the FTSA were willful or knowing.

135. Thus, Plaintiff and the Class are entitled to an award of liquidated damages of $1,500 for each call that Defendant placed in willful or knowing violation of the FTSA. Fla. Stat. § 501.059(10)(b).

136. Under Fla. Stat. § 501.059(11)(a), Plaintiff entitled to recover his reasonable attorney fees and costs from the Defendant.

**COUNT 8**

**Violations of the FTSA, Fla. Stat. § 501.059(5)**
**(On Behalf of Plaintiff and the FTSA Internal DNC Class)**

137. Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above, except for the allegations in the preceding Counts, as though fully set forth herein.

138. It is a violation of the FTSA for a "telephone solicitor or other person" to "initiate an outbound telephone call…or voicemail transmission to a consumer…who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an

25

outbound telephone call…or voicemail transmission…made by or on behalf of the seller whose goods or services are being offered[.]" Fla. Stat. § 501.059(5).

139.    Defendant is, and at all times relevant was, a "telephone solicitor" as defined by Fla. Stat. § 501.059(1)(i).

140.    In addition, and/or in the alternative, Defendant is, and at all times relevant was, an "other person."

141.    Defendant—or third-parties acting on Defendant's behalf—initiated outbound telephone calls to Plaintiff and the Class.

142.    Defendant initiated outbound telephone calls to Plaintiff and the Class who received such calls while located in Florida.

143.    Plaintiff and the Class members communicated to Defendant that they do not wish to receive an outbound telephone call or voicemail transmission made by or on behalf of Defendant.

144.    Defendant continued to initiate outbound telephone calls to Plaintiff and the Class after their request to not receive an outbound telephone call or voicemail transmission made by or on behalf of Defendant.

145.    Thus, Defendant violated Section 501.059(5) of the FTSA.

146.    Plaintiff and the Class members were harmed and aggrieved by Defendant's violations of the FTSA.

147.    Plaintiff and the members of the Class are entitled to an injunction against Defendant's ongoing and future violations of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(1).

148.    Plaintiff and the Class are entitled to an award of liquidated damages of $500.00 for each telephone call that Defendant placed in violation of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(2).

149.    Because Defendant knew or should have known that it was initiating outbound telephone calls to consumers who has previously communicated that they do not wish to receive an outbound telephone call made by or on behalf of Defendant, Defendant's violations of the FTSA were willful or knowing.

150.    Thus, Plaintiff and the Class are entitled to an award of liquidated damages of $1,500 for each call that Defendant placed in willful or knowing violation of the FTSA. Fla. Stat. § 501.059(10)(b).

151.    Under Fla. Stat. § 501.059(11)(a), Plaintiff entitled to recover his reasonable attorney fees and costs from the Defendant.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemizations associated with the allegations herein, including all records, lists, electronic databases or other itemizations in the possession of any vendors, individuals, and/or companies contracted, hired, or directed by Defendant to assist in sending the alleged communications.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for the following relief:

A.   An Order certifying the Class, appointing Plaintiff as Class Representative, and Plaintiff's counsel as Class Counsel;

B.   An Order declaring that Defendant's actions alleged herein violate the TCPA;

C.   An Order declaring that Defendant's actions alleged herein violate the FTSA;

D.   An award to Plaintiff and each member of the Class of statutory damages of $500 for each violation of the TCPA, and an award of $1,500 for each violation found to be knowing or willful;

E.   An award to Plaintiff and each member of the Class of liquidated damages of $500 for each violation of the FTSA, and an award of $1,500 for each violation found to be knowing or willful;

F.   An award to Plaintiff and the Class of their reasonable attorneys' fees and the costs of this action;

G.   An injunction against Defendant's ongoing and future violations of the TCPA and the FTSA; and

H.   Such further and other relief as the Court deems just and necessary.


Dated: January 20, 2025                    Respectfully submitted,

                                           /s/ Chris Gold_____
                                           Chris Gold, Esq.
                                           Florida Bar No. 088733
                                           **GOLD LAW, P.A.**
                                           350 Lincoln Rd., 2nd Floor
                                           Miami Beach, FL 33139
                                           Tel: 305-900-4653
                                           chris@chrisgoldlaw.com

                                           *Counsel for Plaintiff and the Proposed Classes*

28